### NEVADA BANK *vs.* MATTHEW LUCE & another.

Suffolk.    Jan. 14. — June 23, 1885.    FIELD, DEVENS, & COLBURN, JJ., absent.

A., who held wool of the value of less than $4000, consigned to him by B. for sale, in reply to a demand for an advance, telegraphed to B. as follows: "Draw fifteen hundred." B. replied by telegraph as follows: "Will you accept draft two thousand dollars?" To this A. responded as follows: "Think we can get fourteen cents for ninety-nine bales very best. If you decide to sell, draw twenty-five hundred dollars on demand; if not, draw not over fifteen hundred." B. sent the following telegram in reply: "Sell ninety-nine bales, fourteen cents." On receiving the first telegram, B. took it to a bank, and obtained the discount of his draft on A. for $1500; but did not notify A. that he had drawn the draft. On receiving the last telegram sent by A., B. took it to the bank, and asked to have his draft, at sight, on A. for $2500 discounted. In reply to the question whether B. had authorized the sale of the wool proposed in that telegram, B. answered that he had, and showed the last telegram from him to A.; and the bank then discounted the draft. Afterwards the draft for $1500 was presented for payment, and paid by A. Upon presentation of the draft for $2500, A., who had not been previously notified that it had been drawn, refused acceptance and payment; and it was protested for nonpayment, and returned to the bank. B. drew out of the bank his entire balance, before the bank had notice of the

dishonor of the draft. *Held*, in an action on the draft by the bank against A., that the telegrams did not authorize B. to draw more than $2500 in all; and that the action could not be maintained.

CONTRACT on a bill of exchange for $2500, dated at San Francisco on April 3, 1883, signed by one B. W. Owens, and drawn, at sight, upon the defendants, payable to the order of the plaintiff. The declaration contained two counts. The first count alleged that the defendants had accepted the bill; and the second count alleged that they had promised to accept it.

Trial in the Superior Court, without a jury, before *Mason*, J., who reported the case for the determination of this court, in substance as follows:

It appeared that the defendants were wool commission merchants, doing business in Boston; and that, in the latter part of the year 1882, one B. F. Owens, a wool dealer doing business in San Francisco, consigned to them one hundred and fifty-four bales of wool, for sale for his account on commission. At the time of the consignment, the defendants advanced him the sum of $8200 on the security of the wool, by paying two drafts made upon them by Owens, one dated October 30, 1882, for $3600, which was paid on November 6, 1882, and one dated November 23, 1882, for $4600, which was paid on December 2, 1882.

It further appeared that, from that time forward, there was frequent correspondence between Owens and the defendants in regard to the value of the wool and the probable prices to be obtained for it, the evidence tending to show, on Owens's estimate of the value of the wool still unsold in the latter part of March, 1883, there would be a balance due him by the defendants of about $3800; while upon the defendants' estimate, as conveyed to Owens by their letters and telegrams, the balance due him would not be over $3000.

It further appeared that, early in March, 1883, Owens telegraphed the defendants several times, asking for further advances, which the defendants at first refused to make, but, on March 27, telegraphed Owens as follows: "Party has not approved 15 c. wool. Value lot 6 at 16, lot 8 at 18; market very dull. Draw fifteen hundred." To which Owens sent the following reply: "Will you accept thirty days' draft two thousand dollars? Answer." To this the defendants responded as

follows, on April 3: "Think we can get fourteen cents for ninety-nine bales very best. Market is dull, and we advise selling before new clip arrives. If you decide to sell, draw twenty-five hundred dollars on demand; if not, draw not over fifteen hundred." To which Owens replied as follows, on the same day: "Sell ninety-nine bales fourteen cents; hold lots six and eight twenty cents."

On receiving the despatch of March 27, Owens took it to the plaintiff bank, and obtained the discount from the bank of his draft on the defendants for $1500. He gave no notice to the defendants of his having drawn this draft, and the first they heard of it was on April 6, 1883, when it was presented to them for payment, and was paid.

On receiving the telegram of April 3, Owens's clerk took it to the plaintiff's cashier with the draft for $2500, and asked to have the draft discounted, saying that Owens was authorized to draw it, and showed the telegram. The cashier asked whether Owens had authorized the sale of the wool proposed in the telegram, and was told that he had, and was shown the telegram from Owens to the defendants of April 3, set forth above. The cashier then credited Owens's deposit account with the amount of the draft, and took the same.

The defendants had no notice of this draft until it was presented for acceptance, on April 12, 1883, when acceptance was refused, and it was subsequently duly presented for payment, which was also refused. The draft was then duly protested for nonpayment and returned to the plaintiff, and the draft is now owned by it. Owens drew out of the plaintiff bank his entire account, except $26.75, before the bank had notice of the dishonor of the draft of April 3.

The evidence tended to show that the bank acted in good faith in the transaction.

On the above, with the other evidence in the case, the judge made the following findings:

The defendants intended by their telegrams of March 27 and April 3 to authorize Owens to draw but $2500 in all. The telegrams sent, under the circumstances, as between the defendants and Owens, conferred no authority to draw more than $2500 in all. A man of ordinary intelligence, in Owens's place and with

Owens's knowledge, using reasonable care, would have understood the telegrams of March 27 and April 3 to give authority to draw but $2500 in all. Owens is not shown to have knowingly perpetrated fraud in exhibiting the telegram of April 3 to the plaintiff bank, and raising $2500 upon it, as he may have acted from careless reading of the telegram in question. The defendants understood the telegram from Owens of April 1 to be an inquiry whether he could not draw for $2000 at sixty days, in place of the $1500 authorized by the telegram of March 27; and the defendants were justified in so understanding it, and this construction was the natural construction when said telegram was considered with reference to the whole correspondence The plaintiff bank negotiated the bill of exchange in good faith, relying upon the telegram of April 3. The bill of exchange in suit, drawn at sight, differs materially from the bill on demand, authorized by the telegram.

The judge found for the defendants. If, upon the above facts, the plaintiff was entitled to recover, judgment was to be entered for it; otherwise, for the defendants.

*H. G. Parker*, for the plaintiff.

*E. W. Hutchins & H. Wheeler*, for the defendants.

C. ALLEN, J. So far as appears, the telegram on which the plaintiff relies was not sent by the defendants for the purpose of being shown to others. It was one of a series of telegrams, three of which were sent by Owens, and two by the defendants. It was not a contract with the plaintiff, and was not designed to constitute a contract with anybody but Owens. Whoever relies upon such a telegram must rely upon it only in the sense which it bears as between the parties themselves. The defendants cannot be held to any greater responsibility than that which they assumed to Owens. The plaintiff, in order to recover, must show that the bill was drawn in pursuance of the authority given by the defendants to Owens. To ascertain this, the whole correspondence by telegraph is to be looked at. It is quite plain that the defendants did not intend to authorize him to draw $2500 in addition to $1500 already drawn, though unknown to them. By Owens's own estimate of the value of the wool, this would exceed the amount of money which would be coming to him. In view of the earlier telegram, the finding of the judge,

that the telegrams sent conferred no authority to draw more than $2500 in all, was well warranted. The authority to Owens being limited, the plaintiff must be held to have taken the second bill of exchange at its own risk. It is not as if he had had a general letter of credit, or a promise distinctly referring to or describing or including the bill drawn, or designed to be shown to and acted on by others. *Murdock* v. *Mills*, 11 Met. 5. *Exchange Bank* v. *Rice*, 98 Mass. 288. *Central Savings Bank* v. *Richards*, 109 Mass. 413. *Union Bank of Canada* v. *Cole*, 47 L. J. C. P. 100, 110.          *Judgment for the defendants.*